# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRUCE BEHAR,                          )
P.O. Box 3231                         )
Bremerton, WA 98322                   )          Civil Action No. _____
                                      )
     and                 )
                                      )
LAWRENCE MCHALE,                      )
270 Honeysuckle Lane                  )
Oliver Spring, TN 37840               )
                                      )
     and                 )
                                      )
DANA STALEY,                          )
900 W. Main Street, Lot #67           )
Tremonton, UT 84337                   )
                                      )
     and                 )
                                      )
SADIE TALLIE,                         )
4 CR-356                              )
Oxford, MS 38655                      )
                                      )
     and                 )
                                      )
DOROTHY WOODY,                        )
439 Barnes Street                     )
Fairmont, WV 26554                    )
                                      )
     and                 )
                                      )
RONNY MCDOWELL,                       )
24 Crestwood Avenue                   )
Buffalo, NY 14216                     )
                                      )
        Plaintiffs,   )
                                      )
v.                                    )
                                      )
MEDTRONIC, INC.,                      )
710 Medtronic Parkway,                )
Minneapolis, MN, 55432,               )
                                      )
        Defendant.    )

## NOTICE OF REMOVAL

Defendant Medtronic, Inc. ("Medtronic"), a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, by and through its undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of its removal of the above-captioned case from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia. The grounds for removal are as follows:

1.      Plaintiffs commenced this action by filing a complaint on February 19, 2008 in the Superior Court for the District of Columbia. A summons was issued on February 19, 2008, and the case was docketed at 1186-08.

2.      Copies of the complaint and summons were mailed to Medtronic on February 19, 2008. A true and correct copy of the complaint and summons are attached hereto as Exhibit A. No other pleadings or papers have been filed in this litigation.

3.      Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Medtronic of the complaint and summons. Since Medtronic is filing this Notice on February 29, 2008, removal is timely.

4.      The time for Medtronic to answer, move, or otherwise plead with respect to the complaint has not yet expired.

5.      Concurrent with the filing of this Notice, Medtronic is serving this Notice on Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Superior Court for the District of Columbia. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a), because the United States District Court for the District of Columbia is the federal judicial district and division embracing the Superior Court for the District of Columbia, where this action was originally filed.

6.      By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

## DIVERSITY OF CITIZENSHIP

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the amount in controversy exceeds $ 75,000, exclusive of interest and costs, and (2) the suit is between citizens of different states. *Greene v. Am. Fed'n of Gov't Employees*, No. 05-0408 (RMU), 2005 U.S. Dist. LEXIS 19973, at *4 (D.D.C. 2002).

8.      Complete diversity exists between the parties to this action.  Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, and thus is a citizen of Minnesota.  *See* Compl. p. 2; Exhibit B (Affidavit of Keyna P. Skeffington); *Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094 at * 4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota).

9.      Upon information and belief, all of the plaintiffs are citizens of states other than Minnesota.  Upon information and belief, Plaintiff Bruce Behar is a citizen and resident of Washington.  Compl. p. 1.  Upon information and belief, Plaintiff Lawrence McHale is a citizen and resident of Tennessee.  *Id.*  Upon information and belief, Plaintiff Dana Staley is a citizen and resident of Utah.  *Id.*  Upon information and belief, Plaintiff Sadie Tallie is a citizen and resident of Mississippi.  *Id.*  Upon information and belief, Plaintiff Dorothy Woody is a citizen

and resident of West Virginia. *Id.* Upon information and belief, Plaintiff Ronny McDowell is a citizen and resident of New York. *Id.*

10.     Because all of the Plaintiffs are citizens of states other than Minnesota, and Defendant is a citizen of Minnesota, complete diversity exists in this action.

## AMOUNT IN CONTROVERSY

11.     The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 65 (D.D.C. 2002). "Punitive damages are properly considered as part of the amount in controversy." *Id.* at 66.

12.     Here, Plaintiffs each seek damages far in excess of $75,000. Each Plaintiff alleges injuries caused by Medtronic's ICD leads. Compl. ¶ 6 (Bruce Behar) ("a]s a result of Medtronic's defective ICD leads, Plaintiff…suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain"), ¶ 33 (Lawrence McHale) (same), ¶ 60 (Dana Staley) (same), ¶ 87 (Sadie Tallie) (same), ¶ 114 (Dorothy Woody) ("Dorothy Woody suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for case and treatment, and suffered physical and mental pain"), ¶ 141 (Ronny McDowell) ("Ronny McDowell suffered injuries, including, but not limited to, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain"). Indeed, each Plaintiff specifically "demands judgment against Defendant in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs." Compl. p. 26. The amount in

controversy requirement is plainly satisfied where, as here, a plaintiff specifically requests damages in an amount greater than the jurisdictional minimum. *E.g., Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 n.3 (D.D.C. 2007) (recognizing diversity jurisdiction for removal where plaintiff sought damages of $3,000,000).

13.     Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Medtronic.

WHEREFORE, Notice is given that this action is removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

DATED:  March 3, 2008                  Respectfully submitted,

                                       MEDTRONIC, INC.


                                       By:  _____/s/ David M. Gossett_____
                                             One of its Attorneys

                                       Michael E. Lackey, Jr.
                                       David M. Gossett
                                       Mayer Brown LLP
                                       1909 K Street, Northwest
                                       Washington, D.C. 20006-1101
                                       mlackey@mayerbrown.com
                                       dgossett@mayerbrown.com
                                       (202) 263-3000 (t)
                                       (202) 263-3300 (f)

                                       *Attorneys for Defendant*
                                       *Medtronic, Inc.*

## CERTIFICATE OF SERVICE

I, David M. Gossett, an attorney, certify that I caused a copy of the attached Defendant, Medtronic, Inc.'s Notice of Removal to be served by sending the same by facsimile and U.S. mail, postage prepaid, on March 3, 2008, addressed to the following:

>
> Aaron M. Levine
> Brandon J. Levine
> Renee L. Robinson-Meyer
> Steven J. Lewis
> Benjamin J. Cooper
> 1320 19th Street, N.W., Suite 500
> Washington, D.C. 20036
> Fax: (202) 833-8046

>
> ____/s/ David M. Gossett_____
> David M. Gossett

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| BRUCE BEHAR,<br>P.O. Box 3231<br>Bremerton, WA 98322<br><br>and<br><br>LAWRENCE MCHALE,<br>270 Honeysuckle Lane<br>Oliver Spring, TN 37840<br><br>and<br><br>DANA STALEY,<br>900 West Main Street, Lot #67<br>Tremonton, UT 84337<br><br>and<br><br>SADIE TALLIE,<br>4 CR-356<br>Oxford, MS 38655<br><br>and<br><br>DOROTHY WOODY<br>439 Barnes Street<br>Fairmont, WV 26554<br><br>and<br><br>RONNY MCDOWELL<br>24 Crestwood Avenue<br>Buffalo, NY 14216<br><br>       Plaintiffs,<br><br>   v. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} |

RECEIVED
Civil Clerk's Office
FEB 1 9 2008
Superior Court of the
District of Columbia
Washington, D.C.

Civil Action No.

0001186-08

1



MEDTRONIC, INC.,                                    }
710 Medtronic Parkway                              }
Minneapolis, MN 55432                              }
w/s/o CT CORPORATION SYSTEM            }
    1015 15th Street, NW, #1000            }
    Washington, DC 20005                     }
                                                   }
               Defendant.            }
﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏﹏ }

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.      Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.      At all relevant times, Defendant Medtronic, Inc. ("Medtronic") is engaged, or has been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or ICD leads throughout the United States, and is doing business in the District of Columbia.

## COUNT I
### (Negligence – Bruce Behar)

3.      On or about September 14, 2005, Plaintiff Bruce Behar purchased and was implanted with a Medtronic Model 7232 ICD with a Sprint Fidelis lead model 6931. The device and leads were implanted at Sacred Heart Medical Center in Eugene, Oregon.

4.      On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6931, due to defects in the leads.

5.      As a result of Medtronic's defective ICD leads, Plaintiff Bruce Behar requires ongoing medical monitoring and may require surgery to replace said defective device.

6.      As a result of Medtronic's defective ICD leads, Plaintiff Bruce Behar suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.      Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

**COUNT II**
**(Strict Liability – Bruce Behar)**

8.      All of the allegations in Count I are reincorporated and alleged herein by reference.

9.      Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Bruce Behar.

10.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Bruce Behar.

11.     The subject ICD lead implanted in Plaintiff Bruce Behar was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

12.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Bruce Behar, in the condition in which it sold them.

3

13.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

14.    Said product was defective and unreasonably dangerous when put to its intended use.

15.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Bruce Behar was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

16.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Bruce Behar for his ICD lead-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Bruce Behar)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

18.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

19.    Medtronic knew, or should have known, that patients, including Plaintiff Bruce Behar and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

20.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21.    As a direct result of the breach of warranties by Medtronic, Plaintiff Bruce Behar has been injured as aforesaid.

## COUNT IV
### (Misrepresentation – Bruce Behar)

22.    All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

23.    Medtronic represented to patients, including Plaintiff Bruce Behar and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24.    Plaintiff Bruce Behar and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

25.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

26.    As a direct result of said false representations by Medtronic, Plaintiff Bruce Behar was injured as aforesaid.

## COUNT V
### (Punitive Damages – Bruce Behar)

27.    All of the allegations contained in Counts I, II, III, and IV are realleged and incorporated herein by reference.

28.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Bruce Behar's implant, had actual and constructive notice that the subject ICD

5

leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Bruce Behar by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT VI
### (Negligence – Lawrence McHale)

29.    All of the foregoing allegations are realleged and incorporated herein by reference.

30.    On or about January 6, 2006, Plaintiff Lawrence McHale purchased and was implanted with a Medtronic Model 7232 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at Methodist Medical Center in Oak Ridge, Tennessee.

31.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

32.    As a result of Medtronic's defective ICD leads, Plaintiff Lawrence McHale requires ongoing medical monitoring and may require surgery to replace said defective device.

33.    As a result of Medtronic's defective ICD leads, Plaintiff Lawrence McHale suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

34.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT VII
### (Strict Liability – Lawrence McHale)

35.    All of the allegations in Count VI are reincorporated and alleged herein by reference.

36.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Lawrence McHale.

37.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Lawrence McHale.

38.    The subject ICD lead implanted in Plaintiff Lawrence McHale was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

39.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Lawrence McHale, in the condition in which it sold them.

40.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

41.    Said product was defective and unreasonably dangerous when put to its intended use.

42.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Lawrence McHale was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

43.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Lawrence McHale for his ICD lead-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – Lawrence McHale)

44.    All of the allegations contained in Counts VI and VII are realleged and incorporated herein by reference.

45.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

46.    Medtronic knew, or should have known, that patients, including Plaintiff Lawrence McHale and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

47.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

48.    As a direct result of the breach of warranties by Medtronic, Plaintiff Lawrence McHale has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Lawrence McHale)

49.     All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

50.     Medtronic represented to patients, including Plaintiff Lawrence McHale and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

51.     Plaintiff Lawrence McHale and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

52.     At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

53.     As a direct result of said false representations by Medtronic, Plaintiff Lawrence McHale was injured as aforesaid.

## COUNT X
### (Punitive Damages – Lawrence McHale)

54.     All of the allegations contained in Counts VI, VII, VIII and IX are realleged and incorporated herein by reference.

55.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Lawrence McHale's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless,

Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Lawrence McHale by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XI
### (Negligence – Dana Staley)

56.    All of the foregoing allegations are realleged and incorporated herein by reference.

57.    On or about May 31, 2006, Plaintiff Dana Staley purchased and was implanted with a Medtronic Model D154VRC ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at George E. Wahlen Hospital in Salt Lake City, Utah.

58.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

59.    As a result of Medtronic's defective ICD leads, Plaintiff Dana Staley requires ongoing medical monitoring and may require surgery to replace said defective device.

60.    As a result of Medtronic's defective ICD leads, Plaintiff Dana Staley suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

61.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

**COUNT XII**
**(Strict Liability – Dana Staley)**

62.     All of the allegations in Count XI are reincorporated and alleged herein by reference.

63.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Dana Staley.

64.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Dana Staley.

65.     The subject ICD lead implanted in Plaintiff Dana Staley was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

66.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Dana Staley, in the condition in which it sold them.

67.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

68.     Said product was defective and unreasonably dangerous when put to its intended use.

69.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Dana Staley was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

70.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Dana Staley for her ICD lead-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – Dana Staley)

71.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

72.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

73.    Medtronic knew, or should have known, that patients, including Plaintiff Dana Staley and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

74.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

75.    As a direct result of the breach of warranties by Medtronic, Plaintiff Dana Staley has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – Dana Staley)

76.    All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

77.    Medtronic represented to patients, including Plaintiff Dana Staley and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

78.    Plaintiff Dana Staley and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

79.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

80.    As a direct result of said false representations by Medtronic, Plaintiff Dana Staley was injured as aforesaid.

**COUNT XV**
**(Punitive Damages – Dana Staley)**

81.    All of the allegations contained in Counts XI, XII, XIII and XIV are realleged and incorporated herein by reference.

82.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Dana Staley's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug

Administration, the cardiology profession and Plaintiff Dana Staley by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XVI
### (Negligence – Sadie Tallie)

83.     All of the foregoing allegations are realleged and incorporated herein by reference.

84.     On or about June 6, 2006, Plaintiff Sadie Tallie purchased and was implanted with a Medtronic Model 7299 ICD with a Sprint Fidelis lead model 6949.  The device and leads were implanted at North Mississippi Medical Center in Tupelo, Mississippi.

85.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

86.     As a result of Medtronic's defective ICD leads, Plaintiff Sadie Tallie requires ongoing medical monitoring and may require surgery to replace said defective device.

87.     As a result of Medtronic's defective ICD leads, Plaintiff Sadie Tallie suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

88.     Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and  ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

## COUNT XVII
### (Strict Liability – Sadie Tallie)

89.     All of the allegations in Count XVI are reincorporated and alleged herein by reference.

90.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Sadie Tallie.

91.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Sadie Tallie.

92.    The subject ICD lead implanted in Plaintiff Sadie Tallie was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

93.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Sadie Tallie, in the condition in which it sold them.

94.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

95.    Said product was defective and unreasonably dangerous when put to its intended use.

96.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Sadie Tallie was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

97.     By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Sadie Tallie for her ICD lead-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Sadie Tallie)

98.     All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

99.     At all times relevant to this action, Medtronic marketed and promoted ICDs and ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

100.    Medtronic knew, or should have known, that patients, including Plaintiff Sadie Tallie and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

101.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

102.    As a direct result of the breach of warranties by Medtronic, Plaintiff Sadie Tallie has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Sadie Tallie)

103.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

104.    Medtronic represented to patients, including Plaintiff Sadie Tallie and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the

subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

105.    Plaintiff Sadie Tallie and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

106.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

107.    As a direct result of said false representations by Medtronic, Plaintiff Sadie Tallie was injured as aforesaid.

## COUNT XX
### (Punitive Damages – Sadie Tallie)

108.    All of the allegations contained in Counts XVI, XVII, XVIII and XIX are realleged and incorporated herein by reference.

109.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Sadie Tallie's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Sadie Tallie by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXI
### (Negligence – Dorothy Woody)

110.    All of the foregoing allegations are realleged and incorporated herein by reference.

111.    On or about August 9, 2005, Plaintiff Dorothy Woody purchased and was implanted with a Medtronic Model D154VRC ICD with a Sprint Fidelis lead model 6931. The device and leads were implanted at Morgantown Internal Group in Morgantown, West Virginia.

112.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6931, due to defects in the leads.

113.    As a result of Medtronic's defective ICD leads, Plaintiff Dorothy Woody required surgery to replace said defective lead on or about August 31, 2007, at the Monongalia General Hospital in Morgantown, West Virginia.

114.    As a result of Medtronic's defective ICD, Dorothy Woody suffered injuries, including, but not limited to, inappropriate shocks, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

115.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXII
### (Strict Liability – Dorothy Woody)

116.    All of the allegations in Count XXI are reincorporated and alleged herein by reference.

117.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICD leads, which it sold

18

and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Dorothy Woody.

118.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Dorothy Woody.

119.    The subject ICD lead implanted in Plaintiff Dorothy Woody was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

120.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Dorothy Woody, in the condition in which it sold them.

121.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

122.    Said product was defective and unreasonably dangerous when put to its intended use.

123.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Dorothy Woody was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

124.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Dorothy Woody for her ICD lead-related injuries, losses, and damages.

## COUNT XXIII
### (Breach of Warranty – Dorothy Woody)

125.    All of the allegations contained in Counts XXI and XXII are realleged and incorporated herein by reference.

126.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

127.    Medtronic knew, or should have known, that patients, including Plaintiff Dorothy Woody and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

128.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

129.    As a direct result of the breach of warranties by Medtronic, Plaintiff Dorothy Woody has been injured as aforesaid.

## COUNT XXIV
### (Misrepresentation – Dorothy Woody)

130.    All of the allegations contained in Counts XXI, XXII, and XXIII are realleged and incorporated herein by reference.

131.    Medtronic represented to patients, including Plaintiff Dorothy Woody and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

132.    Plaintiff Dorothy Woody and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

133.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

134.    As a direct result of said false representations by Medtronic, Plaintiff Dorothy Woody was injured as aforesaid.

**COUNT XXV**
**(Punitive Damages – Dorothy Woody)**

135.    All of the allegations contained in Counts XXI, XXII, XXIII, and XXIV are realleged and incorporated herein by reference.

136.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Dorothy Woody's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Dorothy Woody by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXVI
### (Negligence – Ronny McDowell)

137.　All of the foregoing allegations are realleged and incorporated herein by reference.

138.　On or about February 9, 2006, Plaintiff Ronny McDowell purchased and was implanted with a Medtronic ICD with a Sprint Fidelis lead model 6948. The device and leads were implanted at Erie County Medical Center in Buffalo, New York.

139.　On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6948, due to defects in the leads.

140.　As a result of Medtronic's defective ICD leads, Plaintiff Ronny McDowell required surgery to replace said defective lead on or about July 17, 2007, at the aforementioned Erie County Medical Center.

141.　As a result of Medtronic's defective ICD, Ronny McDowell suffered injuries, including, but not limited to, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

142.　Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXVII
### (Strict Liability – Ronny McDowell)

143.　All of the allegations in Count XXVI are reincorporated and alleged herein by reference.

144.　Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICD leads, which it sold

and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Ronny McDowell.

145.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Ronny McDowell.

146.    The subject ICD lead implanted in Plaintiff Ronny McDowell was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

147.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Ronny McDowell, in the condition in which it sold them.

148.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

149.    Said product was defective and unreasonably dangerous when put to its intended use.

150.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Ronny McDowell was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

151.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Ronny McDowell for his ICD lead-related injuries, losses, and damages.

## COUNT XXVIII
### (Breach of Warranty – Ronny McDowell)

152.    All of the allegations contained in Counts XXVI and XXVII are realleged and incorporated herein by reference.

153.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

154.    Medtronic knew, or should have known, that patients, including Plaintiff Ronny McDowell and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

155.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

156.    As a direct result of the breach of warranties by Medtronic, Plaintiff Ronny McDowell has been injured as aforesaid.

## COUNT XXIX
### (Misrepresentation – Ronny McDowell)

157.    All of the allegations contained in Counts XXVI, XXVII, and XXVIII are realleged and incorporated herein by reference.

158.    Medtronic represented to patients, including Plaintiff Ronny McDowell and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

159.    Plaintiff Ronny McDowell and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

160.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

161.    As a direct result of said false representations by Medtronic, Plaintiff Ronny McDowell was injured as aforesaid.

**COUNT XXX**
**(Punitive Damages – Ronny McDowell)**

162.    All of the allegations contained in Counts XXVI, XXVII, XXVIII, and XXIX are realleged and incorporated herein by reference.

163.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Ronny McDowell's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.  Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Ronny McDowell by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

**WHEREFORE,** Plaintiff Bruce Behar demands judgment against Medtronic in the sum

of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million

Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Lawrence McHale demands judgment against Medtronic in the

sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two

Million Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Dana Staley demands judgment against Medtronic in the sum

of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million

Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Sadie Tallie demands judgment against Medtronic in the sum

of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million

Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Dorothy Woody demands judgment against Medtronic in the

sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two

Million Dollars ($2,000,000.00) as punitive damages plus costs.

WHEREFORE, Plaintiff Ronny McDowell demands judgment against Medtronic in the

sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two

Million Dollars ($2,000,000.00) as punitive damages plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
Renee L. Robinson-Meyer, #455375
Steven J. Lewis, #472564
Benjamin J. Cooper, #502149
1320 19th Street, N.W., Suite 500

Washington, D.C. 20036
Phone: (202) 833-8040
Fax:     (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

_____
Aaron M. Levine



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

BRUCE BEHAR
    Vs.
MEDTRONIC, INC.

C.A. No.    2008 CA 001186 B

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge THOMAS J MOTLEY
Date:  February 19, 2008
Initial Conference: 9:30 am, Friday, May 23, 2008
Location:  Courtroom 112
          500 Indiana Avenue N.W.
          WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, .jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington,  D.C.  20001  Telephone:  879-1133

| BRUCE BEHAR, et al. |
| --- |

*Plaintiff*

**VS.**

| MEDTRONIC, INC. |
| --- |

*Defendant*

## 0001186-08

Civil Action No. |                |

---

### SUMMONS

To  the  above  named  Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government  or  the  District  of  Columbia  Government  you  have  60  days  after  service  of  this  summons  to serve  your  Answer.  A  copy  of  the  Answer  must  be  mailed   to  the  attorney  for  the  party  plaintiff  who  is suing you. The attorney's name and address appear **below.**    If plaintiff has no attorney, a copy of the Answer  must  be  mailed  to  the  plaintiff  at  the  address  stated  on  this  Summons.

You  are  also  required  to  file  the  original  Answer  with  the  Court  in  Room  JM 170  at  500  Indiana Avenue.  N.W.  between  9:00  am.  and  4:00  pm.,  Mondays  through  Fridays  or  between  9:00  am.  and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy  of  the  Answer  on  the  plaintiff  or  within  five  (5)  days  after  you  have  served  the  plaintiff  If  you  fail to  file  an  Answer,  judgment   by  default  may  be  entered  against  you  for  the  relief  demanded  in  the complaint.

*Clerk of the Court*

| AARON M. LEVINE |
| --- |
Name of Plaintiff's Attorney

| 1320 NINETEENTH ST., NW, 5TH FLOOR |
| --- |
Address

| WASHINGTON, DC 20036 |
| --- |

| (202) 833-8040 |
| --- |
Telephone

By _____C. Kelley_____
Deputy Clerk

Date | 02/19/08 |

PUEDE  OBTENERSE  COPIAS  DE  ESTE  FORMULARIO  EN  ESPANOL  EN  EL  TRIBUNAL  SUPERIOR  DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS  FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 98    **NOTE:  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.**

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRUCE BEHAR, et al.,                    )
                                        )
          Plaintiffs,              )
                                        )
v.                                      )          Civil Action No. _____
                                        )
MEDTRONIC, INC.,                        )
                                        )
          Defendant.               )

## AFFIDAVIT OF KEYNA P. SKEFFINGTON

I, Keyna P. Skeffington, having been duly sworn on oath, hereby depose and state as follows:

1.      I am Assistant Secretary for Medtronic, Inc.

2.      Medtronic, Inc. is a corporation organized and existing under the laws of the State of Minnesota.

3.      A true and correct copy of a certificate of good standing issued by the Minnesota Secretary of State's Office demonstrating that Medtronic, Inc. is in good standing as of the date of such certificate is attached hereto as Exhibit 1.

4.      Medtronic, Inc.'s principal place of business is located in the State of Minnesota,

at 710 Medtronic Parkway, Minneapolis, Minnesota.

FURTHER AFFIANT SAYETH NOT.

KEYNA P. SKEFFINGTON

Subscribed to and sworn
Before me this _28th_ day of
February, 2008

Notary Public

JACQUELINE M. HILTNER
Notary Public
Minnesota
My Commission Expires January 31, 2010

## State of Minnesota

# SECRETARY OF STATE

### Certificate of Good Standing

I, Mark Ritchie, Secretary of State of Minnesota, do certify that:  The corporation listed below is a corporation formed under the laws of Minnesota; that the corporation was formed by the filing of Articles of Incorporation with the Office of the Secretary of State on the date listed below; that the corporation is governed by the chapter of Minnesota Statutes listed below; and that this corporation is authorized to do business as a corporation at the time this certificate is issued.

Name: Medtronic, Inc.

Date Formed:  04/23/1957

Chapter Governed By:  302A

This certificate has been issued on 12/28/07.



*Mark Ritchie*
Secretary of State.

**I (a) PLAINTIFFS**
Bruce Behar, Lawrence McHale, Dana Staley, Sadie Tallie, Dorothy Woody, and Ronny McDowell

**DEFENDANTS**
Medtronic, Inc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Kitsap, WA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Hennepin, MN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Aaron M. Levine
1320 19th Street, NW
Washington, DC 20036

Case: 1:08-cv-00381
Assigned To : Friedman, Paul L.
Assign. Date : 3/3/2008
Description: PI/Malpractice

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O  1 U.S. Government Plaintiff
O  3 Federal Question (U.S. Government Not a Party)
O  2 U.S. Government Defendant
◉  4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | ◉ 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

O  **A. Antitrust**

☐ 410 Antitrust

◉  **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

O  **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O  **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

O  **E. General Civil (Other)**   OR   O  **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ◉ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. § 1446. 28 U.S.C. § 1332 Diversity  Products liability action: Plaintiff claims negligence. strict liability. warranty. misrepresentation, punitives

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** 24,000,000.00<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☐    If yes, please complete related case form.

**DATE** 3/3/08      **SIGNATURE OF ATTORNEY OF RECORD** _(signature)_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.